**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 06-95 (JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT** |
| EDWARD G. ROBINSON, | **AND RECOMMENDATION** |
| Defendant. | |

Andrew R. Winter, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Jordan S. Kushner, **LAW OFFICE OF JORDAN S KUSHNER**, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415, for defendant.

Defendant Edward Robinson has been indicted on charges of possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm. This case is currently before the Court on defendant's motions to suppress evidence. In a Report and Recommendation dated May 19, 2006, United States Magistrate Judge Franklin L. Noel recommended that defendant's motion to suppress witness identifications be denied; that defendant's motion to suppress evidence from search and seizure be denied; and that defendant's motion to suppress statements be granted. Defendant timely objected to the Report and

Recommendation,[1] and this Court has conducted a *de novo* review of the objections pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.2(b). For the reasons discussed below, the Court holds that defendant's motion to suppress evidence of the search and seizure is denied, and the motion to suppress statements is granted in part.[2]

## BACKGROUND

Defendant Edward Robinson first came under the investigation of Officer Mark Nelson of the East Metro Drug Task Force in early February 2006. Officer Nelson states that he had been in contact with a confidential informant ("CI") who told Nelson that defendant lived at the apartment in question and that defendant was selling cocaine from that address. The CI also stated that he had personally been inside the apartment numerous times to purchase narcotics from defendant.

Officer Nelson conducted an investigation to verify that defendant resided at the address stated by the CI. In confirming defendant's residence, Nelson observed that defendant listed that apartment as his address when he was arrested for aggravated assault

---

[1] The prosecution filed a response on June 26, 2006. While the response was filed more than ten days after the objection was filed, the Court on June 19, 2006 specifically requested a response from the prosecution. Accordingly, the response is not untimely, and defendant's motion to strike the response, or in the alternative for leave to file a reply, is denied.

[2] Defendant also argued before the Magistrate Judge that the photo identification should be suppressed as unduly suggestive, that the search warrant lacked probable cause, and that the warrant was based on false information. While defendant's blanket objection to all adverse findings of the Report and Recommendation preserves those issues for review by this Court, defendant does not point the Court to any evidence supporting the contentions that the identification was unduly suggestive or that the warrant was based on false information. Nor does defendant present further argument that probable cause was not sufficiently established by the totality of the circumstances, and the Court, finding the Magistrate Judge's determination of probable cause to be correct, does not disturb the Report and Recommendation on these points.

on December 27, 2005. Nelson also relied on statements made by defendant to Sgt. Bergren in a December 2005 interview, in which defendant disclosed that he resided at the address in question and that the name of his girlfriend was Ebony Brown. Subscriber information subpoenaed from Xcel Energy indicated that Ebony Brown was listed as the subscriber for the apartment in question.

The statements made by defendant to Sgt. Bergren, upon which Officer Nelson relied, were the result of a conversation after defendant was brought into custody as a suspect in a homicide that Sgt. Bergren was investigating. The conversation took place in an interview room at the Ramsey County jail, where defendant was being held. Sgt. Bergren testified at the suppression hearing that defendant immediately informed him that his attorney advised him not to talk about the homicide investigation. Sgt. Bergren then proceeded to ask whether defendant would be willing to meet with Sgt. Bergren if defendant's attorney were present and requested contact information from the defendant. Defendant informed Sgt. Bergren that he resided at the apartment in question, and Sgt. Bergren indicated that he also asked and discovered that the name of defendant's girlfriend was Ebony Brown. Sgt. Bergren testified that defendant was never given a *Miranda* warning, and that Sgt. Bergren did not attempt to contact defendant's attorney, either before or after he requested information about defendant's residence and girlfriend, even though defendant identified his attorney.

After conducting this investigation into defendant's residence, Officer Nelson allegedly utilized the CI to execute a controlled buy from the defendant at the apartment in question. According to his application for a search warrant, Officer Nelson searched

the CI prior to initiation of the buy, and observed the CI enter and exit the apartment building, but he did not observe the CI enter the particular apartment allegedly occupied by defendant.

On February 17, 2006, approximately 40 hours after the controlled buy, a search warrant was issued for the following items: cocaine; mail demonstrating the renter of the premises; money and bank statements showing profit from the sale of drugs; scales and other paraphernalia used in the sale or use of drugs; photos showing drug use, drug paraphernalia, or gang affiliation; all other drugs covered under the controlled substance law; and guns and other weapons.  The search warrant requested a no-knock entry to prevent destruction of evidence and to protect the safety of the officers.  The no-knock entry was granted and the search warrant was executed without knocking and announcing on February 27, 2006 at around 10:00 a.m.  Officer Nelson testified that no one was present at the time the warrant was executed and that a copy of the warrant was left at the residence.  The officers seized documents with defendant's name on them, a firearm, a shoe box containing a scale, baggies and suspected crack cocaine, and miscellaneous photographs.

Defendant was observed walking outside of the apartment building a few hours after the search, and he was arrested.  Upon arrest, defendant was searched and a key to the apartment was discovered.  Defendant was later identified in a photo lineup by the caretaker of the apartment building as someone whom he had seen coming and going from the apartment in question.

In the ten-day period between issuance of the search warrant and its execution on February 27, Officer Nelson conducted surveillance of the apartment building entrance on two days for not more than an hour each day. He did not observe defendant going in or out of the building, did not witness any drug activity connected to the apartment, and did not receive further information from the CI relevant to the warrant.

Defendant moves to suppress any evidence derived from the search of the apartment, primarily on the grounds that the no-knock warrant was unreasonable and that the search warrant had grown stale based on the ten-day delay in executing it. Defendant also moves to suppress the statements made to Sgt. Bergren and any further evidence that was the fruit of those statements.

## ANALYSIS

**I.     Motion To Suppress Evidence As A Result Of An Improper No-Knock Entry**

Defendant contends that the no-knock warrant issued for the search of his apartment was invalid. Specifically, defendant contends that Officer Nelson failed to provide sufficient evidence to demonstrate a reasonable suspicion that evidence would be destroyed or that safety would be threatened if the police complied with the knock and announce requirement. The Magistrate Judge assumed the invalidity of the no-knock warrant, but found that the good faith exception to the exclusionary rule applied because the police reasonably relied on the warrant issued by the judge. The Court need not express judgment on either question.

The Supreme Court's recent decision in *Hudson v. Michigan*, 126 S. Ct. 2159 (2006), held that the remedy of exclusion is inapplicable and unjustified in the context of a knock and announce violation. *See id.* at 2165, 2168. In light of this decision, defendant's request for exclusion of evidence based on the no-knock entry can no longer be maintained and his motion to suppress on this ground is accordingly denied.

## II.    Motion To Suppress Evidence As A Result Of A Stale Search Warrant

"A delay in executing a search warrant may make probable cause fatally stale." *United States v. Rugh*, 968 F.2d 750, 754 (8th Cir. 1992). Search warrants are to be executed promptly, but it is generally accepted that the warrant need only be executed within a reasonable time after its issuance. *See United States v. Shegog*, 787 F.2d 420, 422 (8th Cir. 1986). Execution within a reasonable time "should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se reasonable or unreasonable. Rather it should be functionally measured in terms of *whether probable cause still existed at the time the warrant was executed*." *Id.* (emphasis original). In determining whether probable cause has dissipated, the Court will consider the lapse of time since issuance of the warrant, the nature of the criminal activity, and the kind of property subject to search. *See United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997). The Eighth Circuit has also consistently considered whether the police had evidence of continuing or long-term criminal activity. *See e.g. U.S. v. Morrow*, 90 Fed. Appx. 183, 184 (8th Cir. 2004) (second undercover buy at premises between issuance of warrant and execution kept

warrant from growing stale during seven day delay); *United States v. McCoy*, 6 Fed. Appx. 493, 495-96 (8th Cir. 2001) (given the suspect's history of drug dealing and ongoing investigation, there "was no reason for officers to believe that the warrant would become stale before the expiration date"); *Gibson*, 123 F.3d at 1125 (CI's statements about drug trafficking activity at apartment and police observation of traffic in and out of apartment indicated on-going drug activity); *Shegog*, 787 F.2d at 422 (CI's tip about future drug delivery made eight day delay reasonable). Despite this guidance, the determination whether a warrant has grown stale "necessarily depends upon the facts and circumstances of each case," *Shegog*, 787 F.2d at 423, as the fundamental inquiry is whether probable cause continued to exist under the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In this case, Officer Nelson waited a full ten days between issuance of the warrant and execution of the search. Continuing surveillance of the property was minimal, and it did not reveal any evidence of ongoing drug activity or even any confirmation that defendant resided at the address in question. While the CI stated that he had bought drugs at defendant's apartment on a number of prior occasions, the police conducted only one controlled buy and did not have firm evidence of a long-term on-going drug operation. While evidence of ongoing criminal activity might be interpreted to be only sufficient and not necessary evidence for upholding a warrant against a staleness challenge, the absence of any evidence obtained after the original probable cause determination that would continue to sustain or confirm that determination is troubling. Indeed, courts should be hesitant to find continuing probable cause under such

circumstances. Yet the Court is mindful of the particular facts and items sought in this case, and concludes that it was reasonable to believe the police would find evidence of residency and bank statements, even ten days after issuance of the warrant. Therefore, the Court concludes that the search warrant was not stale and denies defendant's motion to suppress on this ground.

**III.   Motion To Suppress Statements And Fruits Of The Statements**

*Miranda v. Arizona* requires that *Miranda* warnings be given any time a suspect is in custody and is subject to interrogation by law enforcement officials. *See* 384 U.S. 436, 484 (1966). "If the individual indicates in any manner . . . that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74. Further, when the accused asks for counsel, he cannot be subjected to further interrogation until counsel has been made available, unless the accused himself initiates further communication. *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). However, the booking exception announced in *Pennsylvania v. Muniz* "exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services." 496 U.S. 582, 601 (1990).

In the present case, defendant was in custody at the Ramsey County jail and was subject to express questioning by Sgt. Bergren. The Magistrate Judge therefore concluded that *Miranda* applied and that Sgt. Bergren's failure to administer warnings was a violation of *Miranda*. The Magistrate Judge also found that the questions about defendant's girlfriend were outside the booking exception because they did not reasonably relate to those routine "questions to secure biographical data necessary to

- 8 -

complete booking." *Muniz*, 496 U.S. at 601. Sgt. Bergren's questions about defendant's address were similarly beyond the exception because defendant had already been booked and the jail had his contact information on file. The Court agrees with the Magistrate Judge's finding of a *Miranda* violation. In addition, the Court concludes that the officer's further interrogation of defendant after he invoked the right to counsel violates *Edwards*.[3] With the scope of the violation identified, the Court proceeds to the question of proper remedy.

The Court in *Miranda* held that the actual statements obtained in violation of *Miranda* must be excluded in the prosecution's case in chief. *See Miranda*, 384 U.S. at 476. The Court has not endorsed such a clear prohibition against using the fruits of the *Miranda*-defective statements, however. In *Oregon v. Elstad*, the Court held that the fruits of a non-*Mirandized*, but voluntary, statement could be used for impeachment purposes. 470 U.S. 298, 307 (1985). The Court in *Patane* further held that a failure to administer *Miranda* warnings would not justify automatic exclusion of the physical fruits of otherwise voluntary confessions. *United States v. Patane*, 542 U.S. 630, 636-37 (2004). But where an *Edwards* violation, and not simply a mere failure to administer *Miranda* warnings, was involved, some courts have distinguished *Patane* and held that

---

[3] The Court also agrees with the Magistrate Judge's determination that Sgt. Bergren's short conversation with defendant (which did not include threats, promises, or the application of pressure) did not create coercion sufficient to overcome defendant's will, and the interrogation therefore does not violate due process voluntariness standards. *See Haynes v. Washington*, 373 U.S. 503, 513 (1963). In addition, no violation of defendant's Sixth Amendment rights occurred because he had not been charged, arraigned, or indicted at the time questioning occurred and his right to counsel therefore had not attached. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (Sixth Amendment right to counsel does not attach until the initiation of adversary judicial criminal proceedings).

derivative evidence of the *Edwards*-defective statements should be excluded. *See, e.g., United States v. Gilkeson*, 2006 WL 1226530 1, 18-21 (N.D.N.Y. May 9, 2006); *In the Matter of H.V.*, 179 S.W.3d 746, 757-65 (Tex. Ct. App. 2005). However, the Court need not decide the appropriate scope of exclusion for an *Edwards* violation to dispose with the current motion, as the Court finds the search warrant could have been obtained through independent untainted information.

Exclusion of derivative evidence is not justified where a warrant was secured by information from an independent source. *See Segura v. United States*, 468 U.S. 796, 814 (1984). To uphold a warrant on independent information, the prosecution must satisfy two separate inquiries: (1) the decision to seek the warrant must not have been prompted by what was learned from the illegal conduct; and (2) illegally obtained information must not have affected the magistrate judge's decision to issue a warrant. *See Murray v. United States*, 487 U.S. 533, 542 (1988); *United States v. Mithun*, 933 F.2d 631, 635-36 (8th Cir. 1990). When a search warrant is based on both tainted and untainted evidence, "if the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information," exclusion is not necessary. *United States v. Williams*, 633 F.2d 742, 745 (8th Cir. 1980). The Eighth Circuit has recently emphasized, however, that a showing of independent probable cause alone is insufficient, and that the prosecution must also show that the illegally obtained evidence did not affect its motivation to request a search warrant. *See United States v. Leveringston*, 397 F.3d 1112, 1115 (8th Cir. 2005). "[F]indings of fact by the district court are required," and the prosecution "should present specific evidence that the

officers were not prompted by allegedly unlawful activity to obtain the warrant . . . ." *Id.* In assessing the officers' motivation, the essential question the Court must decide is whether the officers would have applied for the search warrants if they did not have the benefit of the illegally obtained information. *See United States v. Estrada*, 45 F.3d 1215, 1221 (8th Cir. 1995). Credible testimony by the officers that they would have applied for the search warrant despite the illegally obtained information has been found sufficient to satisfy the motivation prong. *See id.*

In the instant case, when the improperly obtained statements are excised, the information known to Officer Nelson and to the Magistrate Judge issuing the search warrant would have been in many respects the same. Although both the name of defendant's girlfriend (in combination with the Xcel Energy subscriber information) and defendant's own statement about his address were helpful in confirming defendant's residence at the apartment in question, other evidence also tied defendant to that location, namely defendant's prior arrest record, the statements of the CI that defendant lived there, and the subsequent controlled buy at that building. Viewing this untainted evidence about defendant's residence in combination with the allegations of the CI and the controlled buy of cocaine, the Court determines that probable cause would have been found on these untainted facts and that issuance of a search warrant would have been justified.

The Court further finds that Officer Nelson's decision to seek a search warrant was not substantially motivated by the illegally obtained statements and that Officer Nelson would still have applied for a warrant absent the illegally obtained information.

As discussed above, Officer Nelson already had various other information confirming defendant's residence, and in neither the detention hearing nor the suppression hearing did he indicate that defendant's statements to Sgt. Bergren were a significant factor in his decision to continue his investigation, to conduct a controlled buy, or to seek a search warrant.  In fact, defendant's statement about his address was not even included by Officer Nelson in his application for the warrant.  Based on the record before it, the Court concludes that Officer Nelson would have sought a search warrant even without the benefit of the illegally obtained statements. [4]  The search warrant is therefore upheld on the basis of the independent evidence supporting it, and defendant's motion to suppress the fruits of his statements is denied.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** defendant's objection [Docket No. 49] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 46].  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to suppress witness identifications [Docket No. 27] is **DENIED**.

---

[4] While the Eighth Circuit has refrained from speculating about the motivation of officers, *see Leveringston*, 397 F.3d at 1115, this Court does not believe that it is prevented from making a conclusion based on circumstantial evidence, nor does the Court believe that testimony from police officers is the only way to satisfy the motivation prong.  *Cf. Estrada*, 45 F.3d at 1221 (noting that credible testimony of officers that they would have applied for a search warrant is sufficient evidence on the motivation prong, but not indicating that such testimony is required).

      2.      Defendant's motion to suppress evidence of the search and seizure [Docket No. 29] is **DENIED**;

      3.      Defendant's motion to suppress statements [Docket No. 36] is **GRANTED in part**. Defendant's statements to Sgt. Bergren are suppressed, but to the extent that any fruits were obtained as a result of the unwarned statements, those fruits are not suppressed.

      4.      Defendant's motion to strike or for leave to file reply [Docket No. 55] is **DENIED**.

DATED:   July 25, 2006  
at Minneapolis, Minnesota.

                                      s/ John R. Tunheim  
                                       JOHN R. TUNHEIM  
                                       United States District Judge